**Manuel L. CARRANZA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 45712.**

Court of Criminal Appeals of Texas.

Sept. 19, 1973.

Rehearing Denied Oct. 10, 1973.

Earle Cobb, Jr., San Antonio, for appellant.

Ted Butler, Dist. Atty., John Quinlan, III, Richard D. Woods, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for embezzlement of money over the value of $50.00.

The appellant waived trial by jury and entered a plea of not guilty before the court. Upon finding the appellant guilty, the court assessed the punishment at three (3) years but placed the appellant on probation.

At the outset appellant challenges the sufficiency of the evidence to sustain the conviction.

Omitting the formal parts, the indictment charged that on or about the 19th day of June, 1970, the appellant

" . . . was the . . . employee of HARDY SHOES OF HOUSTON, INC., an incorporated company, and the said MANUEL L. CARRANZA did then and there fraudulently embezzle, misapply, and convert to his own use without the consent of HARDY SHOES OF HOUSTON, INC., an incorporated company, certain money belonging to the said corporation, to-wit, lawful money of the United States of America of the value of over Fifty Dollars ($50.00), which said money had come into the possession and was under the care of the said MANUEL L. CARRANZA by virtue of his employment as such . . . employee; . . . "

The record reflects that appellant served as manager of the Hardy Shoe Store in Central Park Mall of San Antonio from April 13 or 14, 1970 until July 9 or 10,

1970. Upon entering into such employment the appellant had his duties explained to him and signed a "Statement of Responsibility" in which he acknowledged, among other things, that he was to make daily bank deposits and a bank deposit summary was to be mailed weekly to the home office. The statement also included,

"8. I have no authority to borrow or to loan to any person, and will not borrow or loan any cash from the cash drawer, from sales proceeds or from any company funds that come into my custody. . . ."

He was to make all payments for wages to himself and other employees each Friday from money in the cash register.

On July 9, 1970 Joe Rogers, the District Manager for Hardy Shoes of Houston, Inc., came to the store in question for the purpose of making an audit. Appellant was late opening the store that morning and when Rogers announced his purpose the appellant left telling Rogers he had to make some phone calls. He called the store at approximately 1 p. m. relating that he was scared. He consented to return and did so about 2 p. m.

The deposition of Rogers was read into evidence. In it Rogers revealed that his audit showed a $1,708.96 gross shortage of which $1,614.64 represented a merchandise shortage noting that 48 pairs of shoes were missing.

He testified that appellant admitted to him that on June 19, 1970 (date alleged in indictment) he took $71.00 from the cash register to pay Gordon's Jewelers a personal bill, because they had been pressing appellant to pay, and that on other occasions during his employment he had taken $25.00 to pay Joseph's for a sport coat and $39.00 to pay Satel's for a sport coat and had taken smaller amounts on other occasions for different reasons.

A "Change in Status Report" completed by Rogers and signed by the appellant was also introduced in evidence. This was de-scribed as a company dismissal form. In such report appellant admitted taking money from the store in the amount of $400.00 and detailed the earlier admissions made orally to Rogers. Such report also reflects appellant admitted forging payroll vouchers showing two employees had worked more hours than they actually did; that for one period of time he told employees to charge an extra dollar on sandals and tennis shoes; that on occasion he held back or discarded sales tickets when there was not enough money in the register to cover these sales.

An affidavit signed and sworn to by appellant which was obtained by Rogers was admitted into evidence. Such affidavit stated appellant

". . . intentionally used, transferred, concealed, and retained possession of such money and funds without the owners– (sic) concent (sic), contrary to my authority and with intent to convert to my own use . . . the sum involved . . . is in the amount of $400.00."

Frank Medina, who replaced the appellant as store manager, testified he participated in the audit in question, and that during that day he conversed with the appellant at a coffee break and that when he inquired how appellant could "be that much short" appellant replied "he didn't know he was that much short," that he "took $600.-00."

Albert Escobedo, a store employee, testified that appellant, upon previously discovering a shortage, had instructed him to charge an extra dollar for each pair of sandals or tennis shoes that he sold. Escobedo denied that he signed a payroll voucher receipt for the week ending June 3, 1970, which revealed he received $67.69 in wages that week. He stated he had not received any money in wages that week since he had not worked due to an illness.

Testifying in his own behalf the appellant Carranza denied any act of embezzle-

ment. He admitted that he "borrowed" $15.00 or $20.00 from the store's cash register on numerous occasions but testified that he always deducted that amount from his salary when he paid himself from the cash register. He acknowledged that he made a $71.00 payment to Gordon's Jewelers on June 19, 1970, but related that he made the payment out of his own money. He testified that he had signed the instruments relating that he had taken $400.00 because that was better than agreeing that he was responsible for over $1,700.00 of losses. He also testified that he falsified two payroll vouchers at the suggestion of a former employee in order to cover what he thought at the time was a $100.00 shortage. When asked about the missing 48 pairs of shoes, he answered, "I don't know." He offered no refutation of Medina's testimony that he had stated he had taken $600.00. He related that he had torn up some sales slips but they were old ones from "years back."

■ Appellant first contends the evidence is "insufficient to reflect a loss of cash in excess of $50.00." We do not agree. Rogers testified that appellant told him he had taken $71.00 from the register to pay a personal bill at Gordon's Jewelers and that this accounted for part of the shortage. Putting aside any consideration of the affidavit and Change of Status Report, the foregoing would be sufficient to show that more than $50.00 was taken.

Appellant further contends the evidence failed to show a fraudulent intent on his part to convert the money to his own use. Again, we cannot agree.

"Proof of the offense of embezzlement is not required to be made by express and positive testimony. · Thus, the state may make out its case in whole or in part by circumstantial evidence, keeping always, however, within the well-estab-

lished rules forbidding the use of evidence that is irrelevant or incompetent. . . . " 21 Tex.Jur.2d Embezzlement and Conversion § 103, p. 697.

" . . . And proof of the fraudulent intent, one of the essential elements of the offense, may, in the absence of any evidence in the nature of a confession, be made by circumstantial evidence. . . . " 22 Tex.Jur.2d Embezzlement and Conversion § 125, p. 8–9.

■ Appellant acknowledged falsifying payroll vouchers to cover what he thought was a $100.00 shortage. There was also evidence he had held back or discarded sales tickets where there was not enough money to cover such sales. When Rogers arrived for an audit, appellant left[1] and was later persuaded to return. When these factors are taken together with all the other facts and circumstances we conclude that the evidence is clearly sufficient to show appellant's fraudulent intent; even putting aside the affidavit and Change of Status Report.

Considering the evidence in the light most favorable to the court's judgment, as we are required to do, we hold that the evidence is sufficient to support the judgment.

In his second ground of error appellant urges that he

"has been unlawfully convicted contrary to the provision of Amendments I, V, and XIV of the United States Constitution and has been denied due process for the following reasons among other things:

A. The prosecution has refused to make available written evidence tending to establish the innocence of the Defendant, contrary to Article 40.03 Section 5 and Article 38.24 of the Code of Criminal Procedure.

---

1. Evidence of flight is a circumstance from which an inference of guilt may be drawn.

Clayton v. State, 493 S.W.2d 526 (Tex.Cr. App.1973).

B. The Judgment is contrary to the law and evidence according to Article 40.03 Section 9.

C. Evidence was admitted contrary to provisions of Article 39.12 of the Code of Criminal Procedure."

 Appellant's brief fails to supply any further details, cite authorities or even call our attention to any particular portion of the record so that the multifarious ground of error is not in compliance with Article 40.09 § 9, Vernon's Ann.C.C.P. Nothing is presented for review.

The judgment is affirmed.